FILED
2010 Jun-29  PM 12:11
U.S. DISTRICT COURT
N.D. OF ALABAMA


IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

Romona L. Jackson,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    CIVIL ACTION NO. 09-G-2514-S
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
          Defendant.              )

## MEMORANDUM OPINION

The plaintiff, Romona L. Jackson, brings this action pursuant to the

provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g),

seeking judicial review of a final adverse decision of the Commissioner of the Social

Security Administration (the Commissioner) denying her application for Social Security

Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available

before the Commissioner.  Accordingly, this case is now ripe for judicial review under

205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the

Commissioner is supported by substantial evidence and whether proper legal standards

were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that

end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

2

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d

1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she

will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the burden

shifts to the Secretary to show that the claimant can perform some other job."  Pope, at

477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Michael L. Levinson, determined the plaintiff

met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ

found the plaintiff  was able to perform her past relevant work, and accordingly found she

was not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE
## SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant

seeks to establish disability through his or her own testimony of pain or other subjective

symptoms."  Foote, at 1560.

The pain standard requires (1) evidence of an underlying medical condition
and either (2) objective medical evidence that confirms the severity of the
alleged pain arising from that condition or (3) that the objectively
determined medical condition is of such a severity that it can be reasonably
expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this

circuit medical evidence of pain itself, or of its intensity, is not required.

3

> While both the regulations and the <u>Hand</u> standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the <u>Hand</u> standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  <u>See</u> 20 CFR §§ 404.1529 and 416.929;  <u>Hale</u> at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  <u>Foote</u> at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

This case involves a plaintiff who was 46 years old at the time of the ALJ hearing decision and has a seventh grade education.  The ALJ found the plaintiff was able to perform light work, which the vocational expert testified would allow her to do her previous job as a roll operator.

The plaintiff has had several neck surgeries, the most recent being a cervical foraminotomy at C4-5, C5-6, and C6-7 that was performed in January 2004. Treatment notes from her surgeon, Dr. O'Malley, show that in September 2005 an MRI showed a disc protrusion causing cord compression at C6-7.  Record 194.  This MRI also showed a worsening at that level in comparison with a previous MRI.  Record 194.  On September 16, 2005, Dr. O'Malley noted that the plaintiff had undergone epidural steroid injection, which had not helped her neck pain.  Record 193.  Dr. O'Malley noted that she was no worse and no better.  Record 193.  Dr. O'Malley discussed surgical options with the plaintiff, including fusion at C6-7 if she was unable to "put up with the pain."  Record 193.  The plaintiff at that time elected not to have surgery.

The plaintiff was seen by a pain management specialist, Dr. Bailey, on numerous occasions following her surgery.   She saw Dr. Bailey monthly beginning in June 2005 when he reported that she still suffered significant pain.  Dr. Bailey prescribed Lortab 10 three times per day.[1]  She continued on Lortab 10 until September 19, 2005,

---

[1]  Lortab 10/500 contains 10 mg of hydrocodone bitartrate and 500 mg of
(continued...)

when she was placed on Norco 10/325 three times per day.[2]  On September 21, 2005, Dr. Bailey added Mobic (a nonsteroidal anti-inflammatory drug) to the plaintiff's prescriptions. On November 15, 2005, Dr. Bailey increased the plaintiff's dosage of Norco to four per day.  The plaintiff's dosage of Norco was increased to five per day on August 11, 2006.

During the entire time the plaintiff was managed by Dr. Bailey she consistently reported that her pain was at a level of 7 to 10 on a 10 point scale.  Dr. Bailey indicated on numerous occasions the presence of pain behaviors and continued to prescribed opioid analgesics.  Eventually muscle relaxers were added to the plaintiff's prescriptions.

The final treatment note in the record comes from the plaintiff surgeon, Dr. O'Malley.  It is dated September 23, 2008.  Dr. O'Malley wrote:

> At this stage, she has chronic pain which she's had for many years.  She's in pain management.  She's had only temporary relief with conservative measures.  At this stage, I think her options are continuing with pain management but I also think that she is going to have ongoing pain.  We talked about the option of surgery at C6-7 which may help things but it probably wouldn't completely relieve it.  She says that she is not at that stage yet where she would want to go through with it but if she can't put up with it then she may consider that.  At this stage, once again I think she is

---

[1] (...continued)
acetaminophen.  Lortab is an opioid analgesic indicated for the relief of moderate to moderately severe pain.  See, http://www.rxlist.com/lortab-10-drug.htm

[2] Norco 10/325 contains 10 mg of hydrocodone bitartrate and 325 mg of acetaminophen.  Norco is an opioid analgesic indicated for the relief of moderate to moderately severe pain.  See, http://www.rxlist.com/norco-drug.htm

going to have ongoing symptoms of pain.  I do not think that she is going to
be fit for any gainful employment at this stage or at any stage in the future
based on these problems with her neck.

Record 373.

In his decision the ALJ refused to credit the plaintiff's testimony of

disabling pain.  The ALJ's credibility finding was as follows:

Management records show the claimant reports of [sic] severe pain, yet her
pain medication remained virtually unchanged and there is no evidence that
the claimant made emergency room visits or unscheduled office visits for
pain.  A pain rating of 8 to 9 on the pain scale indicates severe and
intolerable pain, yet the claimant [sic] pain medication remained
unchanged.  Dr. Brovender testified that there is a priority of prescribing
pain medication that progress [sic] from Percocet (same as Norco) to
Lortab, OxyContin, and then Morphine.

Record 14.  A review of the record shows the reasons recited by the ALJ for refusing to

credit the plaintiff's testimony are not supported by substantial evidence.

Contrary to the ALJ's assertion that the plaintiff's pain medication

remained "virtually unchanged," the treatment notes from Dr. Bailey show that over

course of several years the plaintiff's Norco was increased from an initial dose of three

per day to five per day.  Dr. Bailey eventually added Mobic and muscle relaxers to the

plaintiff's prescriptions.  He also prescribed Duragesic on October 17, 2005.[3]  However,

the plaintiff reported an allergic reaction to the Duragesic patches, and she was placed

_____

[3] Duragesic is a transdermal system providing continuous systemic delivery of
fentanyl, a potent opioid analgesic.  Duragesic is indicated for management of persistent
moderate to severe chronic pain that requires continuous, around-the-clock opioid
administration for an extended period of time, and cannot be managed by other means.
See, http://www.rxlist.com/duragesic-drug.htm

back on Norco.  Therefore, contrary to the ALJ's assertion the plaintiff's pain medication
was increased and changed an attempt to relieve her pain.

The ALJ's statement concerning the plaintiff's lack of emergency room
visits or unscheduled office visits ignores the fact that the plaintiff actually saw a pain
management specialist on a monthly  basis during the relevant period of time.  It is not
reasonable to discredit the plaintiff for a failure to seek emergency room treatment or
unscheduled office visits under such circumstances.  The plaintiff was being treated with
narcotic pain medication on a continuing basis and there is no evidence to suggest that
visits to the emergency room or unscheduled office visits would have in any way
ameliorated her pain.

The treatment records from Dr. Bailey show a continual increase in the
level of narcotic pain medicine prescribed in an effort to leave the plaintiff's pain.  It also
shows that the plaintiff was treated by a pain management specialist on a monthly basis
beginning in June 2005.  Therefore, the treatment notes show a "longitudinal history of
complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR
96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating
an individual's attempts to seek medical treatment for pain or other symptoms and to
follow that treatment once it is prescribed lends support to an individual's allegations of
intense or persistent pain or other symptoms for the purposes of judging the credibility of

the individual's statements.").  Contrary to the ALJ's assertion, the plaintiff's treatment

history supports her testimony.

      The ALJ's third reason for refusing to credit the plaintiff was that the

medical expert, Dr. Brovender, testified that pain medication was progressively

prescribed beginning with Norco and progressing through morphine.  The ALJ appears to

have concluded that because the plaintiff continued on Norco, Dr. Bailey did not believe

she suffered disabling pain.  However, as already noted, Dr. Bailey attempted to use

Duragesic patches and initially prescribed Lortab.  The ALJ apparently believes that no

one can suffer disabling pain unless they are prescribed medication stronger than Norco.

However, at the hearing Dr. Brovender testified that it would be reasonable to prescribe

Norco for moderately severe pain.  Record 438.  Dr. Brovender also testified that he was

"not saying [the plaintiff] doesn't have pain."  Record 437.  In fact, Dr. Brovender

testified as follows:  "I believe her when she says she has pain."  Record 437.  When Dr.

Brovender's testimony is considered as a whole, it in no way supports the ALJ's implicit

finding that because the plaintiff only took Norco, she did not suffer disabling pain.

      When all the evidence is considered, the ALJ's articulated reasons for

refusing to credit the plaintiff's testimony are not supported by substantial evidence.  A

reasonable fact finder would not have refused to credit the plaintiff based upon the

reasons given by the ALJ.  Therefore, under the Eleventh Circuit Pain Standard the

plaintiff's testimony must be accepted as true.  Hale, 831 F.2d at 1012.

The plaintiff testified at her hearing that she suffered pain that reached a level of 10 each day.  She also testified that her pain required her to rest for five to six hours during the day.  The vocational expert was asked about the vocational impact of pain at the moderately severe to severe level (six to nine on a ten point scale).  He testified that moderately severe pain would preclude any gainful employment.  Record 458.  Therefore, because the plaintiff's pain testimony must be accepted as true, she is disabled within the meaning of the Social Security Act.  The action will be remanded with instructions that the plaintiff be awarded benefits.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 29 June 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.